# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01521-COA

**SHAWN DOUGLAS MOFFETT A/K/A SHAWN**        **APPELLANT**
**MOFFETT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2018 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/12/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.    Following a jury trial, Shawn Moffett was convicted of carjacking and attempting to leave the scene of an accident. On appeal, Moffett does not challenge his carjacking conviction but argues that the evidence was insufficient to convict him of attempting to leave the scene. We hold that the State presented sufficient evidence to convict Moffett. Therefore, we affirm Moffett's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2.    On April 22, 2016, Shawn Moffett was supposed to go fishing with his mother, his

stepfather, and two of his sister's friends. That morning, Moffett learned that he was not going to be able to live with his sister or his grandmother, which apparently upset him.[1] Nonetheless, he went with the group to go fishing. Moffett joined his sister and her two friends in his sister's car, while his mother and stepfather went in their car. Moffett apparently smoked marijuana while riding in his sister's car.

¶3. The group stopped at Sweet Peppers Deli on Highway 49 in Gulfport. While in the restaurant's parking lot, Moffett became uncontrollably angry. He kicked or punched out a back window of his sister's car, climbed through the broken window, and assaulted his sister. Moffett was bleeding by this point and began angrily running, stumbling, and rolling through the parking lot. Moffett then ran out into traffic on Highway 49. He was kicking and swinging at passing cars and finally lay down in the road.

¶4. Kumi Magee was driving north on Highway 49 when he saw Moffett lying in the road. Magee stopped his car to try to help Moffett. Moffett responded by threatening to kill Magee. Magee then walked back to his car, but Moffett rushed him. Magee, a licensed security guard, then drew his gun and tried to calm Moffett. However, Moffett continued to run at Magee. The two men tussled briefly before Moffett disengaged.

¶5. Moffett noticed a Volkswagen Passat driving by in the slow-moving traffic. Moffett ran up to the Passat and tried to open the driver's door, but it was locked. He then jumped on top of the car and dove in through the sunroof. The startled driver abandoned her car and

---

[1] Moffett had been discharged from prison to post-release supervision just two days earlier. The issues with his living arrangements may have had to do with conditions of his post-release supervision. Moffett's prior conviction was for statutory rape, for which he was sentenced to serve twenty years with fifteen years suspended and five years to serve.

ran across the highway in fear. Moffett then began driving the Passat and struck another vehicle. The Passat stalled, but Moffett restarted it and sped north on Highway 49.

¶6. Moffett ran a red light at the intersection of Highway 49 and O'Neal Road. He clipped a Cadillac that was traveling east on O'Neal Road and then slammed into the driver's side of a Nissan Altima that was also traveling through the intersection. The Passat spun out and came to rest in a grassy area ninety feet off of the roadway. An accident reconstructionist concluded that the Passat was traveling at least 83 to 87 miles per hour when it struck the Altima. The speed limit at the intersection was 50 miles per hour.

¶7. Kenny Guidry, an off-duty New Orleans police officer, had been following behind Moffett as he drove north on Highway 49. After Moffett slammed into the Nissan, Guidry stopped his car and went to check on the driver of the Nissan, Megan Wilson. Wilson had been knocked into the passenger seat, her head was out of the passenger side window, and Guidry initially feared that she was dead. Wilson survived but suffered life-threatening injuries, including a subarachnoid hemorrhage (bleeding in the space between her brain and surrounding membrane), a fractured sternum, a fractured neck, and multiple broken ribs.

¶8. As Guidry attended to Wilson, he watched Moffett get out of the Passat and walk to a blue car that was parked nearby. Guidry observed Moffett pulling on the door handle of the blue car. Guidry told others in the area not to allow Moffett to get away. Moffett then fell to the ground near the blue car. Crime scene investigators later found a trail of blood from the Passat to the blue car, dried blood on the driver's door of the blue car, and blood smeared across the door handle. Paramedics attempted to help Moffett, but he continued to

3

try to get up. The paramedics had to tie Moffett's wrists so that they could treat him.

¶9. Moffett was indicted for one count of carjacking and one count of leaving the scene of an accident that resulted in the mutilation, disfigurement, or permanent disability of another person. *See* Miss. Code Ann. § 63-3-401(1) & (4) (Rev. 2013). Prior to trial, the court ordered Moffett to undergo a competency examination and held a competency hearing. The examining psychologist found that Moffett was competent to stand trial and assist in his defense, and Moffett and his attorney agreed that he was competent. The court found that Moffett was competent to stand trial.

¶10. The case proceeded to a jury trial. After the close of the State's case-in-chief, the State moved to amend the indictment to charge Moffett with felonious attempt to leave the scene of the accident rather than the completed offense. The trial court granted the motion.[2] Moffett presented an insanity defense at trial; however, two different psychologists testified that Moffett had no history of mental illness and that there was no evidence that at the time of the offense he suffered from any mental defect or disorder that would have prevented him from appreciating the quality or wrongfulness of his actions. The jury rejected Moffett's insanity defense and found him guilty on both counts.

¶11. The court sentenced Moffett to serve fifteen years for carjacking. The court sentenced

---

[2] Moffett's trial counsel objected to the amendment, but the trial court properly granted the motion. Indeed, a formal amendment to the indictment was unnecessary. "On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same . . . ." Miss. Code Ann. § 99-19-5(1) (Rev. 2015). Thus, an indictment for a completed offense puts the defendant "on notice" that he may be convicted of an attempt, and an amendment to the indictment to charge an attempt is proper because it has "the same result as a permissible jury instruction on the attempt charge." *Patton v. State*, 109 So. 3d 66, 81 (¶45) (Miss. 2012).

4

Moffett to serve twenty years for attempting to leave the scene of an accident, with all twenty years suspended, five years of reporting post-release supervision, and fifteen years of non-reporting post-release supervision. Moffett subsequently filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

**ANALYSIS**

¶12. On appeal, Moffett argues that the evidence presented at trial was insufficient to sustain a conviction for attempting to leave the scene of an accident. Specifically, Moffett argues that his act of "pulling on the door handle" of the blue car is insufficient to prove that he attempted to leave the scene.

¶13. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶14. Moffett was convicted of the crime of attempting to leave the scene of an accident that resulted in an injury. Miss. Code Ann. § 63-3-401(1) & (4).[3] "[A]n attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its

_____

[3] Moffett was convicted under subsection (4), which provides for greater punishment if the accident resulted in, inter alia, "the death of another or the mutilation, disfigurement, [or] permanent disability . . . of another." Moffett does not dispute that Wilson's injuries were sufficiently severe to support a conviction under subsection (4).

5

commission." *Bucklew v. State*, 206 So. 2d 200, 202 (Miss. 1968); *accord* Miss. Code Ann. § 97-1-7(1) (Rev. 2014). "The mere intention to commit a crime is not punishable; the intention must therefore be coupled with an overt act." *Green v. State*, 269 So. 3d 75, 82 (¶19) (Miss. 2018) (quotation marks omitted) (quoting *Croft v. State*, 992 So. 2d 1151, 1159-60 (¶33) (Miss. 2008)). The first two elements of an attempt require only "the intent to commit a crime plus any slight act toward its consummation." *Ford v. State*, 218 So. 2d 731, 732 (Miss. 1969). "[I]n many cases, the State is not privy to direct evidence of intent because of the impossibility of peering inside a defendant's mind[,]" but the jury is free to infer intent from the defendant's "acts coupled with the surrounding facts and circumstances." *Thomas v. State*, 277 So. 3d 532, 535 (¶14) (Miss. 2019). As to the third element, the State must show that the defendant's failure to complete the crime was due to some "extraneous cause[] and not a voluntary cessation." *Powers v. State*, 883 So. 2d 20, 27 (¶16) (Miss. 2003). The jury is also free to infer from surrounding facts and circumstances that the attempt failed. *Thomas*, 277 So. 3d at 535 (¶14).

¶15.   The evidence presented in this case was sufficient for a rational juror to have found Moffett guilty beyond a reasonable doubt. Testimony and physical evidence showed that Moffett tried to get in the blue car after he wrecked the Passat. The jury was free to infer that he did so with the intent to steal the car and then flee the scene.[4] The fact that Moffett had

---

[4] It may well have been impossible for Moffett to steal the car and leave the scene, either because of his own physical condition following the wreck or because he could not have started the blue car. However, "impossibility is not a defense" to a charge of attempt "when the impossibility grows out of extraneous facts not within the control of the [defendant]." *Duke v. State*, 340 So. 2d 727, 730 (Miss. 1976) (citing *Stokes v. State*, 92 Miss. 415, 428, 46 So. 627, 629 (1908)).

just accomplished one carjacking supports an inference that he intended to take another car to get away. In addition, Guidry perceived that Moffett was still attempting to leave, and he urged bystanders to stop him. Moffett's attempt to open the door to the blue car also constitutes an overt act toward the commission of the offense. *Ford*, 218 So. 2d at 732 (holding that the State need only prove "any slight act toward [the] commission" of the offense). Finally, the jury was free to infer from the evidence that Moffett failed to or was prevented from completing the offense. The testimony and physical evidence support a reasonable inference that his efforts to leave the scene were frustrated by a locked car door or his own physical condition, not a voluntary abandonment of purpose.

## CONCLUSION

¶16. The State presented sufficient evidence for a rational juror to convict Moffett of attempting to leave the scene of an accident. Therefore, Moffett's conviction and sentence on that count and his unchallenged conviction and sentence for carjacking are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**